# DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| **WILLIAM F. GALLAGHER, M.D.,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL NO. 1:15-CV-244-DBH** |
| **PENOBSCOT COMMUNITY** | ) | |
| **HEALTHCARE; UNITED STATES OF** | ) | |
| **AMERICA; ROBERT P. ALLEN, M.D.,** | ) | |
| **NOAH NESIN, M.D.; TERRY WHITE;** | ) | |
| AND **LORI DWYER, ESQ.,** | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

## DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

This lawsuit centers on allegations of age discrimination against a doctor formerly employed by Penobscot Community Healthcare, a non-profit healthcare provider located in Bangor, Maine. I conclude that the plaintiff has failed to demonstrate any viable federal claims, and that if he wishes to pursue his state law claims, he should do so in state court.

### PROCEDURAL HISTORY

Dr. William F. Gallagher filed this lawsuit in federal court against his former employer Penobscot Community Health Care ("PCHC"), PCHC's Medical Director Dr. Robert Allen, its Chief Medical Officer Dr. Noah Nesin, its Chief Human Resources Officer Terry White, and its General Counsel and Compliance and Risk Officer Lori Dwyer. Third Am. Compl. ¶¶ 2-7 (ECF No. 33) (hereafter "Am. Compl."). In two counts, Dr. Gallagher alleged that PCHC violated the

Maine Human Rights Act's prohibitions against age discrimination and retaliation.  Id. at ¶¶ 57-66, 77-82.  Similarly, Dr. Gallagher alleged in two counts that PCHC violated the federal Age Discrimination in Employment Act's ("ADEA") prohibitions against age discrimination and retaliation.  Id. at ¶¶ 67-76, 83-88.  He also claimed that PCHC breached its contract with him, id. at ¶¶ 132-138, that PCHC, Nesin, White, and Dwyer retaliated against him for exercising his First Amendment rights, id. at ¶¶ 123-131, and that PCHC and all the individual defendants violated his Fifth Amendment Due Process rights.  Id. at ¶¶ 113-122.  He made five claims grounded in Maine tort law, alleging that PCHC and each of the individual defendants committed the torts of intentional infliction of emotional distress, negligent infliction of emotional distress, libel and slander *per se*, publication of injurious falsehood, and tortious interference with existing and prospective advantageous economic relations.  Id. at ¶¶ 89-107.  Finally, he named the United States as a defendant on the basis that the other defendants are deemed federal employees of the Public Health Service under the Federally Supported Health Centers Assistance Act ("FSCHCAA") for whom the United States is liable under the Federal Tort Claims Act ("FTCA").

The United States filed a Rule 12(b)(1) motion to dismiss the claims against it for lack of subject matter jurisdiction on account of sovereign immunity.  The remaining defendants filed a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  Dr. Gallagher then moved to amend his Second Amended Complaint, attaching a proposed Third Amended Complaint.  All defendants opposed the motion to amend.

I **GRANT** the plaintiff's motion to amend, I apply the defendants' motions to dismiss to the Third Amended Complaint, and I **GRANT** the motions to dismiss.

### ASSERTED FACTS

On the defendants' motions to dismiss, I take as true the Third Amended Complaint's factual assertions and view them in the light most favorable to the plaintiff as the non-moving party.

PCHC employed Dr. Gallagher as a licensed physician practicing dermatology.  Am. Compl. ¶ 19.  Some PCHC staff leveled complaints about Dr. Gallagher, including that he was "old school."  Id. at ¶ 22.  Other complaints were lodged against him unrelated to age.  Id. at ¶ 23.  When these complaints were not investigated according to protocol as Dr. Gallagher saw it, he attempted to investigate the complaints on his own, but he was ordered to cease and desist and "threatened with adverse employment action if he did not comply" with the order.  Id. at ¶¶ 23-25, 32-35.  Although no investigation uncovered any illegal, immoral, unethical, or actionable conduct on the part of Dr. Gallagher, and although the quality of Dr. Gallagher's patient care in each annual review was found to be good, PCHC Executive Medical Director Dr. Robert Allen on an unspecified date told Dr. Gallagher to retire, implying that he was too old.  Id. at ¶¶ 27-30.

In December of 2012, PCHC advertised a new dermatology position, and in February of 2013 solicited another dermatologist under the pretext of "helping [Dr. Gallagher] out" and "to help him change patients' perception of him."  Id. at ¶¶ 50-50A.  PCHC suspended Dr. Gallagher's employment on about June 27, 2013, on the pretext of staff complaints.  Id. at ¶ 31.  On about April 3, 2014, on

the pretext of patient complaints, PCHC terminated Dr. Gallagher, one day after a patient complained that Dr. Gallagher was too old.  Id. at ¶¶ 48-49.  PCHC Medical Director Dr. Allen used the number of patient complaints against Dr. Gallagher—an average of about two per year—as a basis for taking adverse employment action against him when PCHC knew or should have known that dermatology specialists like Dr. Gallagher typically receive far more complaints than general practitioners and that there is no correlation between such a level of complaints and the quality of care delivered.  Id. at ¶¶ 36-40.  According to Dr. Gallagher, PCHC admitted that it considered all patient complaints against Dr. Gallagher in taking adverse employment action against him, even complaints that were not justified or valid.  Id. at ¶ 43.  Additionally, PCHC and the individual defendants reported Dr. Gallagher's termination to the Maine State Board of Licensure in Medicine; the Board engaged in a lengthy investigation of Dr. Gallagher's fitness and "dismissed the complaint," finding no justification for taking adverse action against Gallagher's medical license.  Id. at ¶¶ 51-53.

## ANALYSIS

Federal courts have limited subject matter jurisdiction.  They may entertain only disputes that involve a "federal question" or are between citizens of different states.  Here, the plaintiff and all the defendants except the United States are citizens of Maine.  Therefore, for this Court to have jurisdiction, Dr. Gallagher must have sufficiently pleaded a federal question on which relief can be granted.  28 U.S.C. § 1331.  Moreover, "[f]ederal courts lack jurisdiction over claims against the United States unless the government has waived its sovereign immunity."  Sanchez v. United States, 740 F.3d 47, 50 (1st Cir. 2014).

4

### FEDERAL CLAIMS

Dr. Gallagher has asserted federal claims under the ADEA, 29 U.S.C. §§ 621-634; the FSHCAA, 42 U.S.C. § 233; the FTCA, 28 U.S.C. § 1346(b); and the United States Constitution.  I discuss each in turn.

*(1)     **ADEA Claims***

PCHC argues that Dr. Gallagher has failed to state a viable claim for which relief may be granted under the ADEA because he failed to file a complaint with the Equal Employment Opportunity Commission ("EEOC").  PCHC Mot. to Dismiss at 4-5 (hereafter "PCHC Mot.") (ECF No. 27).  Even in his Third Amended Complaint, in the face of this argument Dr. Gallagher has failed to allege that he did file an EEOC complaint, arguing instead that "administrative filing requirements are not mandatory in every case."  Pl.'s Opp'n to PCHC Mot. at 3 (ECF No. 31).  He cites a Seventh Circuit decision, Smith v. General Scanning, Inc., 876 F.2d 1315, 1317 (7th Cir. 1989), that held the "ADEA's administrative filing requirements are not jurisdictional; rather, they are only preconditions to filing suit.  Therefore, they are subject to equitable modifications."  Pl.'s Opp'n to PCHC Mot. at 3-4.  Dr. Gallagher asks that his ADEA claims not be dismissed while he attempts to establish equitable reasons through discovery for allowing him to continue his lawsuit despite not having filed an EEOC complaint.  Id at 4.

Like the Seventh Circuit, the First Circuit says that the administrative filing requirement is "not jurisdictional."  Martinez-Rivera v. Puerto Rico, 812 F.3d 69, 78 (1st Cir. 2016) (describing Kale v. Combined Ins. Co., 861 F.2d 746, 751-52 (1st Cir. 1988)).  But it is "mandatory," id., and ignoring the EEOC filing

requirement under the ADEA constitutes a "fatal failure to exhaust" that bars claims from federal court.  Id.; see also Tapia-Tapia v. Potter, 322 F.3d 742, 744 (1st Cir. 2003) ("compliance [with the EEOC filing requirement] must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of the ADEA").  In Tapia-Tapia, the First Circuit declared that the district court in that case "had no choice but to dismiss [the plaintiff's] ADEA claim."  Id. at 745.

Dr. Gallagher has shown no ground for applying the equitable tolling exception to excuse his failure to file an EEOC complaint.  Equitable tolling is a doctrine that is "reserved for exceptional cases," Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998), and "First Circuit law permits equitable tolling only where the employer has actively misled the employee."  Thomas v. Eastman Kodak Co., 183 F.3d 38, 53 (1st Cir. 1999). The First Circuit has further stated:

> Equitable tolling applies only if the employee is aware of his ADEA rights, yet fails to file a timely administrative charge due to reasonable reliance upon the employer's deceptive conduct.  Such employer deception must *exceed* any alleged deception that is part and parcel of the ADEA claim itself . . . and must have succeeded in lulling the plaintiff into believing that it was not necessary for him to commence litigation.

O'Neill v. New York Times Co., 145 F. App'x 691, 694-95 (1st Cir. 2005) (citations omitted) (emphasis in original).  Dr. Gallagher has made no allegations that satisfy the requirements of either Thomas or O'Neill, matters that largely should be within his knowledge.  Simply asking permission "to establish equitable

6

reasons for modification in this case through discovery," Pl.'s Opp'n to PCHC Mot. at 4, is not enough.

Because Dr. Gallagher has failed to exhaust his administrative remedies as required by the ADEA, 29 U.S.C. § 626(d)(1), and has alleged no adequate ground for his failure, he has no viable claim under the ADEA.

**(2)   *FSHCAA and FTCA Claims Against the United States***

In the absence of waiver or consent, sovereign immunity protects the United States from being sued.  FDIC v. Meyer, 510 U.S. 471, 475 (1994); Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 39 (1st Cir. 2000) ("As a sovereign nation, the United States is immune from liability except to the extent that it consents to suit.").  I proceed to consider whether the United States has waived sovereign immunity here.

The FSHCAA allows the Health Resources and Services Administration, an agency under the U.S. Department of Health and Human Services, to "deem" certain health providers and their employees as employees of the United States Public Health Service for liability purposes under the FTCA.  42 U.S.C. § 233(g). There is no dispute that PCHC and its employees are "deemed" Public Health Service employees.   Dr. Gallagher alleged deeming in the Third Amended Complaint.  In turn, the United States attached the relevant documents to its motion to dismiss, and Dr. Gallagher has not challenged them.  This "deeming" provides PCHC and its employees protection from being sued as an entity and

as individuals, waives the United States' sovereign immunity under the FTCA,[1] and allows an aggrieved party to sue the United States in place of them.  See 42 U.S.C. § 233(a).  But the FSHCAA waives that sovereign immunity only "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his employment."  Id.  This is the language that is critical to the dispute between Dr. Gallagher and the United States.

Dr. Gallagher argues that the defendants' adverse employment action against him was "largely on the basis of alleged patient complaints,"[2] that the "complaints necessarily arose in the context of PCHC's medical functions," Pl.'s Opp'n to Gov't Mot. at 3 (ECF No. 32), and that it therefore fits within the 42 U.S.C. § 233(a) requirement that a plaintiff's damage result from the performance of "medical . . . or related functions."  Id.  He also argues that the sovereign immunity waiver is not limited to patients' medical malpractice claims, but extends to suits over services provided to non-patients (like Dr. Gallagher) if the Secretary has determined that provision of those services "facilitates the provision of services to patients of the entity" or are "required under an

---

[1] The FTCA waives the United States' tort liability immunity for claims that allege "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  Dynamic Image Techs., Inc. v. United States 221 F.3d 34, 39 (quoting 28 U.S.C. § 1346(b)).

[2] At the same time, he says that patient complaints were only a pretext.  Third Am. Compl. ¶ 48.

employment contract." <u>Id</u>. at 4, citing 42 U.S.C. § 233(g)(1)(B)&(C).[3]  Thus, Dr. Gallagher is essentially arguing that the defendants' adverse employment action against him and their reporting him to the Board of Licensure were themselves "services" to a non-patient (Dr. Gallagher), services that in turn facilitated the provision of services to patients:  "The services the PCHC Defendants performed of which Plaintiff complains indeed facilitated 'the provision of services to patients of PCHC.'"  <u>Id</u>. at 5.  He argues that the services "also were required under 'an employment contract (or similar arrangement),'" inasmuch as Dr. Gallagher had such a contract.  <u>Id</u>.

The "services" argument seems far-fetched, but I need not address it, because the First Circuit has clearly limited section 233(a) to medical malpractice claims, and Dr. Gallagher's claims are not medical malpractice claims.  In <u>Mendez v. Belton</u>, 739 F.2d 15, 19 (1st Cir. 1984), a physician sued her colleague, a Public Health Service official, for civil rights violations under 42 USC §§ 1983 & 1985, on account of the revocation of her hospital staff privileges.

---

[3] The relevant part of the statute states:

   (B) The deeming of any entity or officer, governing board member, employee, or contractor of the entity to be an employee of the Public Health Service for purposes of this section shall apply with respect to services provided—
      (i) to all patients of the entity, and
      (ii) subject to subparagraph (C), to individuals who are not patients of the entity.
   (C) Subparagraph (B)(ii) applies to services provided to individuals who are not patients of an entity if the Secretary determines, after reviewing an application submitted under subparagraph (D), that the provision of the services to such individuals—
      (i) benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity;
      (ii) facilitates the provision of services to patients of the entity; or
      (iii) are otherwise required under an employment contract (or similar arrangement) between the entity and an officer, governing board member, employee, or contractor of the entity.

The defendant official claimed the immunity from suit that section 233(a) provides for individuals (at the same time as it opens the United States to liability), and the district court granted summary judgment in favor of the defendant official.  Id.  The First Circuit disagreed, holding:

> The statute protects Public Health Service officers or employees from suits that sound in medical malpractice.  Dr. Mendez's action against Dr. Belton for alleged acts of intentional discrimination on the basis of race and sex occurring in the course of the professional peer review process is not the sort of malpractice claim that 42 U.S.C. § 233(a) . . . meant to protect against.

Id.  In other words, section 233(a) covers only medical malpractice claims.  Dr. Gallagher attempts to cabin this reading of section 233(a).  He wants to limit Mendez's holding to instances where adverse employment action resulted from *peer review activities* and distinguish his case where *patient* complaints allegedly provoked his adverse employment action: "no aspect of the peer review actions on which the [Mendez] lawsuit [was] based involved patient complaints of the care provide[d] by the staff."  Pl.'s Opp'n to Gov't Mot. at 3.[4]  I conclude that this is a distinction without a difference.  Even though the adverse employment action against the physician in Mendez was based on the performance of medical functions and thus the delivery of healthcare to patients (The peer review process at dispute in Mendez was a result of one doctor criticizing another for allegedly performing medically unnecessary surgeries, Mendez, 739 F.2d at 17.), the First Circuit found section 233(a) inapplicable and limited its coverage to cases of

---

[4] As I observed earlier, he also says that patient complaints were pretextual.  See note 2 supra.

medical malpractice.[5]  To use the <u>Mendez</u> language, Dr. Gallagher's claim is "for alleged acts of intentional discrimination on the basis of [age] occurring in the course of" the suspension and termination of a physician employee.  It "is not the sort of malpractice claim that [section 233(a)] meant to protect against."  <u>Id</u>. at 19.  Thus, the FSHCAA does not apply to the termination of Dr. Gallagher's employment,[6]  FTCA remedies are not available, and his claims against the United States are barred by sovereign immunity.

### (3)   *Constitutional Claims*

Dr. Gallagher's final two federal claims are grounded in the Constitution. He alleges that the defendants Allen, White, Nesin and Dwyer violated his Fifth Amendment Due Process rights when they treated him differently from other employees by engaging in intentional discrimination based upon age, Am. Compl. at ¶¶ 113-122, and that White, Nesin and Dwyer violated his First

---

[5] I do not address <u>Castillo v. United States</u>, 707 F.2d 422 (9th Cir. 1983), because <u>Mendez</u> addressed that case and declined to follow it.  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 108 (2d Cir. 2000), did state broadly that "there is nothing in the language of § 233(a) to support [the] conclusion" that it "provides immunity only from medical malpractice claims."  The Second Circuit referred to <u>Mendez</u> as involving "an allegation of intentional discrimination on the basis of race and sex by a supervisor against an employee during a professional peer review process" and concluded that <u>Mendez</u> was inapposite because the challenged conduct had nothing to do with the "performance of medical . . . or related functions."  <u>Id</u>.  I do not share the Second Circuit's limited view of <u>Mendez</u>, (the basis for the suspension of hospital staff privileges in <u>Mendez</u> was alleged unnecessary surgeries on patients), and in any event I follow <u>Mendez</u> as governing Circuit precedent.

[6] I do not address the United States' additional argument that the specific deeming decision as to PCHC here covered only medical malpractice.  Gov't Mot. at 4-5.  Certainly the first deeming decision in 2005 bears that interpretation:  it "deems [PCHC] to be an employee of the PHS for purposes of Federal Tort Claims Act (FTCA) medical malpractice liability coverage."  Letter of May 2, 2005, attached as Exhibit A to Decl. of Kara Hicks (ECF No. 28).  But the later deeming letters, including those for the period of the adverse action against Dr. Gallagher, do not repeat that language.  Notices of Deeming Action attached as Exhibit C to Decl. of Kara Hicks.

The clear First Circuit precedent on the scope of section 233 also obviates the need to address the parties' legislative history arguments.

Amendment rights by retaliating against him for objecting to age-related discrimination.  Am. Compl. at ¶¶ 123-131.

Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), allows individuals to sue federal employees for damages for constitutional violations in certain limited circumstances.  I need not undertake a lengthy Bivens analysis, however, because there is clear First Circuit precedent directly on point.  The constitutional claims alleged by the plaintiff here are "a mere restatement of his age discrimination claim" and his ADEA retaliation claim and therefore "they are not justiciable" under Bivens.  Tapia-Tapia, 322 F.3d at 745.[7]  "The ADEA provides the exclusive federal remedy for age discrimination in employment," id., and the plaintiff's constitutional claims must be dismissed.

### STATE LAW CLAIMS

The remaining claims in the Third Amended Complaint are state law claims over which this court may exercise supplemental jurisdiction if they are so related that the state claims form part of the same case or controversy as the claims brought under federal law.  28 U.S.C. § 1367(a).  But if a court dismisses the "foundational federal claims, it must reassess its jurisdiction," and "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation."  Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  As the Supreme Court has noted, "[n]eedless decisions of state law should be avoided both as a matter of comity and to

---

[7] Dr. Gallagher has not argued that his constitutional claims are broader than his ADEA discrimination and retaliation claims.  See Pl.'s Opp'n to PCHC Mot. at 6-7, 17 (ECF No. 31).

12

promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  That is the case here:  the foundational federal claims are being dismissed at a very early stage of the litigation, and the remaining state law claims are best resolved in state court.  I therefore decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3); Desjardins v. Willard, 777 F.3d 43, 46 (1st Cir. 2015).

### CONCLUSION

Sovereign immunity deprives this Court of jurisdiction over the claims against the United States, and Dr. Gallagher's Third Amended Complaint fails to state a claim on which relief may be granted from a federal court on the federal claims against the other defendants.  As a result, the motions to dismiss the plaintiff's ADEA claims, his claims against the United States, and his constitutional claims are **GRANTED**.  I decline to exercise supplemental jurisdiction over the state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE** to any relief that the plaintiff may seek in state court.

**SO ORDERED.**

**DATED THIS 15TH DAY OF MARCH, 2016**

/s/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**